UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERTO MENDOZA RAYMUNDO,

Petitioner,

v.

JUDITH ALMODOVAR, in her official
capacity as Acting Field Office Director, New
York Field Office, U.S. Immigration &
Customs Enforcement; MARKWAYNE
MULLIN, in his official capacity as
Secretary, U.S. Department of Homeland
Security; TODD BLANCHE, in his official
capacity as Acting Attorney General, U.S.
Department of Justice; RAUL
MALDONADO, in his official capacity as the
Metropolitan Detention Center
Warden,

Respondents.

**MEMORANDUM & ORDER**
26-CV-02304 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Petitioner Roberto Mendoza Raymundo ("Petitioner"), who has been detained for over

nine months and counting, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing

that his detention by U.S. Immigration and Customs Enforcement ("ICE") without adequate

procedural protections violates the Due Process Clause of the Fifth Amendment and the

Administrative Procedure Act ("APA"). *See* ECF No. 1 (Petition).[1] For the reasons that follow,

his Petition is GRANTED.

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

The Court derives the following facts from both parties' submissions. Petitioner is a citizen of Guatemala who entered the United States in 2004 without inspection or parole.[2] *See* ECF No. 1 ¶ 39; ECF No. 1-3 (Notice to Appear); ECF No. 6 at 2 (Government's Response). Petitioner asserts that he has been consistently employed since then, and that prior to his detention, he lived with his wife, who is a lawful permanent resident, and his stepson. ECF No. 1 ¶ 39. Over the years, Petitioner has had numerous contacts with the criminal justice system. *Id.* ¶¶ 43–44. In 2016, after he was arrested for drunk-driving-related offenses, Petitioner pled guilty to Aggravated Driving While Intoxicated *Per Se*, a misdemeanor offense under Section 1192 of the New York Vehicle and Traffic Law. *Id.* ¶ 43; ECF No. 6 at 2. According to counsel for Petitioner, between 2016 and 2019, Petitioner was convicted three times of disorderly conduct under Section 240.20(7) of the New York Penal Law ("N.Y.P.L."). ECF No. 1-1 ¶ 9 (Declaration of Austin Thierry, Esq.). And Petitioner "has had several other arrests and court summonses over the past 21 years for non-violent offenses." *Id.* ¶ 10; *see* ECF No. 6 at 2.

On August 23, 2025, Petitioner was arrested for consuming alcohol in public and received a desk appearance ticket. ECF No. 1 ¶ 45. ICE, in turn, received a notification about Petitioner and transported him to 26 Federal Plaza in Manhattan. *Id.* Petitioner was then transferred to several different detention facilities before he was ultimately detained at the Metropolitan Detention Center in Brooklyn. *Id.* ¶¶ 46–47. Shortly after Petitioner's arrest, on August 28, 2025, ICE filed a Notice to Appear charging Petitioner as inadmissible under

---

[2]     According to the government, Petitioner entered the country "at an undetermined date, time, and location." ECF No. 6 at 2.

8 U.S.C. § 1182(a)(6)(A)(i).[3]  *Id.* ¶ 48.  Petitioner appeared before an Immigration Judge ("IJ")

for removal proceedings multiple times, but each time, his hearing was adjourned for various

reasons.[4]  *See id.* ¶¶ 49–53.

After six months in detention, on February 25, 2026, Petitioner requested a bond hearing,

which occurred on March 5, 2026.  *Id.* ¶ 57.  The IJ denied Petitioner bond because Petitioner

"[had] not met his burden of proving that he is not a danger to the community."  ECF No. 1-5 at

2 (IJ Memorandum & Order); *see* ECF No. 1-4 at 2 (IJ Order).  The IJ was particularly

concerned with Petitioner's 2016 arrest and conviction for Aggravated Driving While

Intoxicated *Per Se* and reasoned that "alcohol has played a central role in many of [Petitioner's]

arrests and convictions," which "renders him a danger to the community."  ECF No. 1-5 at 4, 5.

The IJ further found that Petitioner had "not provided any documentation to corroborate [his]

assertion" that he was "not drinking or doing anything wrong" when he was arrested for

disorderly conduct in 2015; that he did not provide sufficient evidence of certain mitigating

circumstances related to a 2019 arrest; that the overall record of Petitioner's criminal history was

"scant"; and that the dispositions of certain of Petitioner's arrests were "unknown."  *Id.* at 4, 5.

Because the IJ made a finding of dangerousness, she declined to consider whether Petitioner was

a flight risk.  *Id.* at 6.  Nor did she consider any alternatives to detention or Petitioner's ability to

pay a potential bond.  *See generally* ECF No. 1-5; *see* ECF No. 1 ¶ 59.  In March 2026,

---

[3]     ICE had initially filed a Notice to Appear on the day of Petitioner's arrest, and again on August 25, 2025, but those notices were rejected by the Executive Office for Immigration Review for unrelated reasons.  *See* ECF No. 6-1 ¶¶ 8, 10 (Declaration of Dmitry Rousseau); ECF No. 1-3.

[4]     Petitioner requested adjournments of these proceedings to secure counsel, to give counsel an opportunity to prepare, to file applications for relief from removal, and to get married.  ECF No. 1 ¶¶ 49–53.

Petitioner appealed the IJ's denial of bond to the Board of Immigration Appeals ("BIA"), which remains pending.[5] ECF No. 1 ¶ 60; ECF No. 6 at 3; ECF No. 6-1 ¶ 26.

Petitioner initiated the instant action on April 17, 2026, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* ECF No. 1. The same day, the Court issued an Order to Show Cause directing the government to respond to the Petition and specifically to address "the constitutionality of [the] bond hearing that has already occurred pursuant to 8 U.S.C. § 1226(a), in which Petitioner was denied bond and has appealed that determination to the [BIA]." Apr. 17, 2026, Text Order. The government filed its response on April 29, 2026, *see* ECF No. 6, and Petitioner filed his reply on May 4, 2026, *see* ECF No. 8 (Petitioner's Reply).

### LEGAL STANDARD[6]

Petitioner is in custody pursuant to 8 U.S.C. § 1226(a), which authorizes the government to arrest and detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). Such detention, however, is discretionary. Unlike its counterpart in Section 1225(b)(2)(A), which provides for mandatory detention, Section 1226(a) permits the government to release a noncitizen on bond or parole pending a decision on removal. *See id.* § 1226(a)(2). And the Second Circuit recently confirmed that Section 1226(a), not Section 1225(b)(2)(A), applies to noncitizens like Petitioner who entered the United States without inspection and admission and were not apprehended at or near

---

[5] Petitioner asserts that he appealed the IJ's denial of his bond application on March 12, 2026, *see* ECF No. 1 ¶ 60, but the government asserts that he did so on March 18, 2026, *see* ECF No. 6 at 3; ECF No. 6-1 ¶ 26. Petitioner also appealed the IJ's denial of his application for cancellation of removal, which likewise remains pending before the BIA. ECF No. 1 ¶ 62.

[6] The framework of this decision is adopted from Judge Rochon's decision in *J.C.G. v. Genalo*, No. 24-cv-08755, 2025 WL 88831 (S.D.N.Y. Jan. 14, 2025).

the border at the time of entry. *Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026).

Petitioner initiated this action pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). Such jurisdiction, however, "is properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by immigration judges." *Id.*; *see* 8 U.S.C. § 1226(e).

**DISCUSSION**

Petitioner asserts two claims for relief. First, he argues that the government violated his procedural due process rights under the Fifth Amendment by requiring him to shoulder the burden of justifying his own liberty at his initial bond hearing. Petitioner further claims that at that hearing, the IJ should have considered alternatives to detention and Petitioner's ability to pay a bond (the "procedural requirements"). Alternatively, Petitioner argues that in light of his prolonged detention, which currently exceeds nine months, due process entitles him to a subsequent bond hearing at which the government carries the burden of justifying his detention (a "burden-shifted hearing") and the IJ complies with the above-described procedural requirements. *See* ECF No. 1 ¶¶ 106–112. Second, Petitioner argues that the burden allocation at his initial bond hearing violated the APA. *See id.* ¶¶ 113–118.

The Court concludes that under the Due Process Clause of the Fifth Amendment, Petitioner's prolonged detention requires a burden-shifted hearing at which the IJ also considers alternatives to detention and Petitioner's ability to pay a bond.[7]

**I.      Due Process**

The Fifth Amendment's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is undisputed that "the Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Habeas review based on allegations of due process violations "is not limited to evaluating the lawfulness of detention when it is first imposed . . . but is also available to challenge whether, at some point, an ongoing detention has become unlawful." *Id.*

To determine whether the government's ongoing detention of Petitioner violates his due process rights, the Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez*, 978 F.3d at 851 (applying the *Mathews* test in the context of civil immigration confinement). Under that test, the Court must balance: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

---

[7]      Having concluded that Petitioner's prolonged detention without a burden-shifted hearing with the necessary procedural requirements violates the Due Process Clause of the Fifth Amendment, the Court need not address Petitioner's additional arguments.

In considering the *Mathews* factors, the Court looks to the Second Circuit's decision in *Velasco Lopez*. There, the petitioner failed to carry the burden to justify his freedom from detention at two bond hearings, and the court held that under *Mathews*, the petitioner "was denied due process because he was incarcerated for fifteen months (with no end in sight) while the Government at no point justified his incarceration." 978 F.3d at 846.

First, the court in *Velasco Lopez* determined that the first *Mathews* factor, the private interest that will be affected by the official action, "cut[] sharply in [the petitioner's] favor." *Id.* at 852. The court reasoned that "the private interest affected by the official action [was] the most significant liberty interest there is—the interest in being free from imprisonment." *Id.* at 851. The same is true here. Petitioner has spent over nine months in detention, separated from his wife and stepson and unable to maintain employment or any semblance of normality. *See id.* at 851–52. Like the petitioner in *Velasco Lopez*, "[t]here is no question that [Petitioner here has] suffered a substantial deprivation of liberty." *J.C.G.*, 2025 WL 88831, at *8 (finding the same where petitioner was incarcerated for nine months).

Next, the *Velasco Lopez* court found that the second *Mathews* factor, the risk of an erroneous deprivation of the private interest at stake through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, similarly weighed in the petitioner's favor. The petitioner "was neither a flight risk nor a danger to the community but was unable to prove that was the case" due to a lack of information about his criminal history, from which the IJ drew adverse inferences. 978 F.3d at 853. Unlike the petitioner, however, the government "had substantial resources to deploy" to provide the missing information, which "demonstrated the value for due process purposes of the burden-shifting." *Id.* Here, as in *Velasco Lopez*, the IJ pointed to Petitioner's failure to provide certain information about his

criminal history and referred to the record as "scant" and "unknown," *see* ECF No. 1-5 at 4, 5, but "information pertaining to [Petitioner's criminal history] would have been readily accessible to the Government." *J.C.G.*, 2025 WL 88831, at *8. Therefore, "the procedures underpinning [Petitioner's] lengthy incarceration markedly increased the risk of error." *Velasco Lopez*, 978 F.3d at 852.

Finally, the court in *Velasco Lopez* concluded that the third *Mathews* factor, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail, counseled in favor of the petitioner. Specifically, the court held that "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." 978 F.3d at 854. Weighing the *Mathews* factors, the court "conclude[d] that the district court appropriately addressed the [due process] violation by ordering a new hearing at which the Government was called upon to justify continued detention." *Id.* at 855. The same result is required here.

The government advances numerous counterarguments, none of which is persuasive.[8] First, the government asserts that unlike in *Velasco Lopez*, Petitioner "has not been detained for fifteen months." ECF No. 6 at 4. True enough. But as the government itself points out, *Velasco Lopez* did not "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." 978 F.3d at 855 n.13; ECF No. 6 at 4. "On any calculus," the court explained, the petitioner's "fifteen-month incarceration

---

[8]     The Court only addresses the government's arguments that are relevant to its decision. For example, because the Court need not reach Petitioner's argument about the constitutionality of his initial bond hearing, the Court likewise need not reach the government's counterargument in defense of that bond hearing.

without a determination that his continued incarceration was justified violated due process." *Velasco Lopez*, 978 F.3d at 855 n.13. But as a general matter, "a presumptively constitutional period of detention does not exceed six months." *Id.*

Although nine months, admittedly, is less than fifteen months, it certainly exceeds six months, and the Court finds that it qualifies as a prolonged detention warranting a burden-shifted hearing.[9] *See, e.g.*, *Black v. Decker*, 103 F.4th 133, 159 (2d Cir. 2024) (holding that petitioner's seven-month detention under 8 U.S.C. § 1226(c) required a burden-shifted hearing); *J.C.G.*, 2025 WL 88831, at *10 (holding that petitioner's nine-month detention under § 1226(a) required a burden-shifted hearing and collecting cases); *Catalan v. Mullin*, No. 26-cv-1680, 2026 WL 1398927, at *2 (E.D.N.Y. May 19, 2026) (granting a burden-shifted hearing under § 1226(a) where petitioner was detained for more than 10 months).[10]

Second, the government asserts that "any error in the allocation of the burden of proof was not prejudicial," because "there is no reason to believe that the IJ would have reached a different conclusion had the burden been shifted." ECF No. 6 at 5. However, *Velasco Lopez* makes clear that "the longer detention continues, the greater the need for the Government to

---

[9]     As the Court noted *supra* at 3 n.4, the IJ adjourned many of Petitioner's removal hearings at Petitioner's request. Those adjournments, however, have no bearing on the Court's analysis of prolonged detention. *See J.C.G.*, 2025 WL 88831, at *10 ("That [petitioner] requested and was granted extensions does not alter this Court's procedural due process analysis.").

[10]     The government asserts that *Black* is inapposite because the petitioner there was detained under a different statutory authority, 8 U.S.C. § 1226(c). ECF No. 6 at 5. However, the court in *Black* applied the same *Mathews* due process framework that the Court applies here and explicitly noted that, like here, "*Velasco Lopez* bears on [the court's] determination." *Black*, 103 F.4th at 147. Therefore, the difference in statutory authority "means only that [*Black*] is not directly binding here, not that its reasoning is irrelevant." *Id.* at 149, 157 ("Both sections 1226(a) and (c) aim to prevent flight and danger to the community. Once those detentions have been unconstitutionally prolonged, the due process analysis adopted in *Velasco Lopez* applies with equal force to both situations.").

justify its continuation." 978 F.3d at 855. Therefore, even if it were possible to know whether the IJ "would have reached a different conclusion had the burden been shifted" back on March 5, today, the government must do more to justify Petitioner's continued detention. ECF No. 6 at 5. For these reasons, the Court is not swayed by the government's arguments.[11]

## II. Additional Procedural Requirements

Finally, Petitioner requests that at a subsequent bond hearing, the IJ consider alternatives to detention and Petitioner's ability to make a bond payment. *See* ECF No. 1 ¶ 4. Because "courts in this [Circuit] overwhelmingly agree that IJs must consider [those] two factors . . . when determining bond for a detained immigrant," the Court agrees with Petitioner and imposes those requirements. *O.F.C. v. Decker*, No. 22-cv-2255, 2022 WL 4448728, at *10 (S.D.N.Y. Sept. 12, 2022) (collecting cases); *Black*, 103 F.4th at 158 ("The district court . . . properly required the IJ to consider [the petitioner's] ability to pay and alternatives to detention when setting any bond amount."); *Cantor v. Freden*, 761 F. Supp. 3d 630, 632 (W.D.N.Y. 2025) (requiring "a neutral decisionmaker [to] consider whether alternatives to detention can reasonably address the government's interest in [petitioner's] continuing detention").[12]

---

[11]     Although the government does not argue that Petitioner must exhaust his administrative remedies before seeking judicial intervention, for the avoidance of doubt, the Court excuses exhaustion—if any were required—because Petitioner has raised a substantial constitutional question. *See Arango v. Genalo*, No. 25-cv-6720, 2025 WL 3637500, at *3 (E.D.N.Y. Dec. 16, 2025).

[12]     To be clear, the IJ must consider alternatives to detention when assessing both dangerousness and risk of flight. The dicta in *Black* "that a showing of dangerousness by clear and convincing evidence would foreclose any possibility of bond," 103 F.4th at 159, is merely stating the obvious. *Black*, however, "cannot fairly be read to bar an IJ from considering alternatives to detention in assessing" dangerousness. *D.C. v. Noem*, No. 26-cv-1833, 2026 WL 787895, at *12 (S.D.N.Y. Mar. 20, 2026). Indeed, "[h]ow can an [IJ] decide that a noncitizen's detention is necessary to prevent danger to the community unless the [IJ] also considers alternatives that might eliminate that danger?" *Cantor*, 761 F. Supp. 3d at 637–38. For example,

**CONCLUSION**

For the reasons stated above, Petitioner's prolonged detention violates the Due Process Clause of the Fifth Amendment, and his petition for a writ of habeas corpus is GRANTED. *See* ECF No. 1. By no later than June 3, 2026, the government shall provide Petitioner with an individualized bond hearing before an IJ, where the IJ will meaningfully consider alternatives to detention and Petitioner's ability to pay if a monetary bond is set, and where the government will have the burden of showing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. By 4:00 p.m. the next day, on June 4, 2026, the government shall file a letter on the docket certifying its compliance with this Order. The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
May 27, 2026

---

as the court in *Cantor* made clear, and as is relevant here, while "a noncitizen with a history of drunk driving might well pose a serious danger to the community," *id.* at 638, that risk could be mitigated with specific bond conditions, such as a prohibition against driving coupled with alcohol abuse counseling. At that point, the IJ could very well conclude that the noncitizen no longer poses a danger to the community. And nothing in *Black* comes close to prohibiting this sort of analysis by an IJ. *See D.C.*, 2026 WL 787895, at *12.